**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § § | |
| | § | Civil Action No. 6:20-00952-ADA |
| | § | Civil Action No. 6:20-00953-ADA |
| *Plaintiff*, | § | Civil Action No. 6:20-00956-ADA |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., | § § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF (GROUP I PATENTS)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................... ii

I.    INTRODUCTION ........................................................................................ 1

II.    U.S. PATENT NO. 7,477,876 ("THE '876 PATENT")................................ 1

    A.    Disputed Terms........................................................................... 1

        1.    "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" (Claim 1) ........................................................................ 1

III.    U.S. PATENT NO. 8,149,776 ("THE '776 PATENT")................................ 4

    A.    Disputed Terms........................................................................... 4

        1.    "[transmitter] attempting access to a wireless network" (Claim 1) / "transmitter configured to attempt access to a wireless network..." (Claim 10) ........................................................................... 4

        2.    "processor" (Claims 10, 11, 12, 14, 15, 16, 18, 19)................................... 6

        3.    "program of instructions" (Claim 19) ...................................... 8

IV.    U.S. PATENT NO. 8,767,614 ("THE '614 PATENT")................................ 9

    A.    Disputed Terms........................................................................... 9

        1.    "means for causing sending of a buffer information report to a system station" (Claim 6)   "at least one processor; and at least one memory including computer program code[,] the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus ... sending of a buffer information report to a system station" (Claim 13) ................................... 9

        2.    "means for causing sending of an indication to the system station" (Claim 6)   "at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus . . . sending of an indication to the system station" (Claim 13)................................ 12

        3.    "the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following: process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension" (Claim 14) ....................................................... 13

V.    CONCLUSION........................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. BMW N. Am., LLC*,
  No. 08-cv-164, 2009 WL 8080892 (E.D. Tex. Dec. 18, 2009) ..............................................15

*Brown v. Baylor Healthcare Sys.*,
  No. 08-372, 2009 WL 1011186 (S.D. Tex. May 7, 2009).......................................................15

*Cordis Corp. v. Medtronic AVE, Inc.*,
  339 F.3d 1352 (Fed. Cir. 2003)................................................................................................2

*Dyfan, LLC v. Target Corp.*,
  No. 6:19-cv-179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020) ................................8

*Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*,
  No. 10-cv-260, 2012 WL 5494087 (E.D. Tex. Nov. 13, 2012)..............................................15

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  493 F.3d 1358 (Fed. Cir. 2007)................................................................................................3

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
  933 F.3d 1345 (Fed. Cir. 2019)................................................................................................5

*Joao Bock Transaction Sys. v. First Nat'l Bank*,
  No. 11-cv-1642, 2013 WL 3199981 (E.D. Ill. June 24, 2013) ..............................................15

*In re Katz Interactive Call Processing Patent Litigation*,
  639 F.3d 1303 (Fed. Cir. 2011)..............................................................................................11

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
  324 F.3d 1308 (Fed. Cir. 2003)..............................................................................................14

*Metaswitch Networks Ltd. v. Genband USA LLC*,
  No. 14-cv-744, 2015 WL 11197822 (E.D. Tex. Aug. 10, 2015)...........................................15

*Mobility Workx, LLC v. T-Mobile US, Inc.*,
  No. 4:17-cv-567, 2018 WL 3636548 (E.D. Tex. July 31, 2018) ............................................5

*Personalized Media Commc'ns LLC v. Zynga, Inc.*,
  No. 12-cv-68, 2013 WL 4630447 (E.D. Tex. Aug. 28, 2013)...............................................15

*Queens Univ. at Kingston v. Samsung Elecs Co.*,
  No. 14-cv-53, 2015 WL 2250384 (E.D. Tex. May 13, 2015) ...............................................15

*SeaChange Int'l, Inc. v. C-COR, Inc.*,
  413 F.3d 1361 (Fed. Cir. 2005).................................................................................2

*St. Isidore Research, LLC v. Comerica Inc.*,
  No. 15-cv-1390, 2016 WL 4988246 (E.D. Tex. Sept. 19, 2016)..............................14

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015).................................................................................4

*Technology Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008)...............................................................................14

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012).................................................................................2

*Twilio, Inc. v. TeleSign Corp.*,
  No. 16-cv-6925, 2017 WL 4573371 (N.D. Cal. Oct. 13, 2017) ...............................15

*WSOU Invs. LLC v. Google LLC*,
  No. 6:20-cv-571-ADA, Dkt. 46 (W.D. Tex June 2, 2021) ...................................7, 10

**Statutes**

35 U.S.C. § 112, ¶ 6......................................................................................... *passim*

## I.    INTRODUCTION

Plaintiff WSOU Investments, LLC (d/b/a Brazos Licensing and Development) ("WSOU") submits this sur-reply claim construction brief in response to Defendant OnePlus's reply brief (Dkt. 42) concerning the disputed claim terms of U.S. Patent Nos. 7,477,876 ("the '876 patent"), 8,149,776 ("the '776 patent"), and 8,767,614 ("the '614 patent").

The Court should adopt WSOU's proposed constructions and reject OnePlus's proposals. In its attempt to rebut WSOU's claim construction positions, OnePlus's reply brief parrots many of the same arguments from its opening brief, relies on much of the same inapposite case law, and mischaracterizes the intrinsic record.  In addition, rather than submitting its own expert declaration, OnePlus attempts to rebut WSOU's expert declarant, Dr. Cooklev, with nothing more than its counsel's *ipse dixit*.  OnePlus can neither overcome the presumption that the non-"means" disputed claim terms of the '776 and '614 patents do not invoke 35 U.S.C. § 112, ¶ 6, nor its burden of establishing by clear and convincing evidence that any of the disputed terms of these patents are indefinite.

## II.    U.S. PATENT NO. 7,477,876 ("THE '876 PATENT")

### A.    <u>Disputed Terms</u>

1.    **"varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" (Claim 1)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning, which is: varying a rate for reporting information about the status of the communication channel from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station | varying a rate for reporting channel quality information from a mobile station to a base station using only the mobile station's detection of the presence or absence of an actual data transmission from the base station as the trigger for varying the rate, and not varying the rate based on the content of the data transmission or any other message or signal instructing such action |

The Court should reject OnePlus's proposed construction, which is based on an alleged disclaimer of patent scope during prosecution of the application for the '876 patent.  Nothing OnePlus cites rises to the level of a "clear and unmistakable" disclaimer of subject matter that would otherwise be covered by the claims, let alone a disclaimer of the breadth OnePlus alleges. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) ("To constitute disclaimer, there must be a clear and unmistakable disclaimer.").  Rather, to support its proposed construction, OnePlus mischaracterizes the prosecution history and its impact on the construction of the disputed claim term.  *See* Dkt. 35 at 3-4.

In its reply brief, OnePlus primarily relies on *SeaChange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005), but that case is inapposite.  There, the Federal Circuit grappled with the question of whether prosecution statements that the applicant purportedly made to distinguish only certain claims from the prior art nevertheless applied to all the claims, where the applicant identified one pending claim as being representative of all others and never articulated to the examiner that the distinguishing statements applied only to some claims but not others.  *Id.* at 1372-75.  That issue does not exist here.  Rather, the issue here is whether the applicant's statements that the prior art did not disclose an express element of the claims triggers a disclaimer of patent scope (and, as OnePlus apparently contends, a disclaimer even broader than the statements themselves).

The prosecution history does not reflect any "clear and unmistakable" intent by the applicant to disclaim any method that varies feedback based on the absence or presence of a data transmission from the base station to the mobile station.  *See Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003) (finding no "clear and unmistakable surrender of" claimed subject matter where the prosecution statement was "amenable to multiple reasonable

interpretations").   Rather, during prosecution, the applicant distinguished the Chen reference because "Chen fails to teach or suggest every recited limitation," including the express claim limitation of "varying a rate for reporting channel quality information from a mobile station to a base station as a function of ***the presence or absence of a data transmission at the mobile stations***." *Id*. at 2, 5-7 (emphasis added).   The applicant was explicit that "Chen does not teach varying feedback from the mobile based on the absence or presence of a <u>data transmission from the base station to the mobile</u> [station]"—an express element of the claims. Ex. D at 5-6 (emphasis in original).   Thus, the applicant was clear in its intent that the claims cover methods that vary feedback based on the absence or presence of a data transmission from the base station to the mobile station—something the prior art did not teach.   The applicant emphasized the absence of this express claim element in the prior art, rather than the absence of an element of the prior art in the claims as OnePlus contends.   *See Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 493 F.3d 1358, 1365 (Fed. Cir. 2007) (finding no disavowal of claim scope where it was reasonable to interpret prosecution statements as distinguishing a prior art reference for not having a certain claim element, rather than for having another element).   Accordingly, OnePlus's disclaimer argument is meritless.

III.     **U.S. PATENT NO. 8,149,776 ("THE '776 PATENT")**

A.     **Disputed Terms**

1.     **"[transmitter] attempting access to a wireless network" (Claim 1) / "transmitter configured to attempt access to a wireless network..." (Claim 10)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite. | This claim should be construed under 35 U.S.C. 112, ¶ 6. <br><br> Function: attempting access to a wireless network by sending on a random access channel at a first transmit power a first preamble comprising a signature sequence and by randomly selecting the signature sequence from a set of signature sequences <br> Structure: none disclosed <br><br> The claim is indefinite. |

The "transmitter" claim elements in the '776 patent do not require construction and have plain and ordinary meanings that a POSA would readily understand.  Indeed, OnePlus does not even allege that a POSA would have any trouble understanding the plain language of the claim phrases.  Instead, OnePlus premises its claim construction position on the faulty argument that claims 1 and 10 of the '776 patent require that the transmitter itself perform (or be configured to perform) the task of "***randomly selecting***" a signature sequence as an active step of practicing the claims.  Dkt. 42 at 5.  But that is simply not what the claims state.

Rather, the claims recite "a signature sequence that ***is randomly selected*** from a set of signature sequences."  Ex. E at claims 1, 10.  Claims 1 and 10 do not use the words "randomly selected" as a verb, but instead use them adjectivally to describe the nature of the recited signature sequence at the time of transmission by the transmitter.  Thus, to practice claims 1 and 10, the transmitter need only send (or be configured to send) a signature sequence that has already been "randomly selected," however accomplished.  *See, e.g., Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290-91 (Fed. Cir. 2015) (rejecting defendant's contention that "being provided

to" was an "active step of the claimed method"; "We find that 'being provided to' is not used as a verb in claim 38, but instead is a part of a phrase that conveys information about the 'pre-processing parameters.'"); *Mobility Workx, LLC v. T-Mobile US, Inc.*, No. 4:17-cv-567, 2018 WL 3636548, at *15-16 (E.D. Tex. July 31, 2018) (in construing the phrase "at least one foreign agent identified for each of the geographical future states," rejecting defendant's argument that "'identified for' is a dynamic verb phrase that describes an active step of identification," holding instead that "the disputed term is sufficiently clear on its face that the system is configured such that at least one foreign agent is (or has been) identified for each of the geographical future states.").

The Court should reject OnePlus's request to import an additional active step of "randomly selecting a signature sequence" into claims 1 and 10. In the '776 patent specification, the applicants disclosed that the ***user equipment***—not necessarily the transmitter component—"[1] randomly selects a signature sequence and [2] transmits a first preamble that has the randomly generated/selected signature sequence[.]" Ex. E at 5:62-6:29. The applicants plainly knew how to describe randomly selecting a signature sequence and transmitting the signature sequence as two separate active steps performed by a single subject, but chose not to do so in claims 1 and 10. *See Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1352 (Fed. Cir. 2019) ("The written description demonstrates that the inventor knew how to describe quality assurance... [T]he inventor's decision to claim a connection that provides high quality of service instead of a connection that provides assured quality of service informs a person of ordinary skill in the art that the claims require something more than mere assurance of quality."). Had the applicants intended to claim a method or apparatus in which the transmitter itself must randomly select the signature sequence, as OnePlus proposes, they would have claimed a transmitter that attempts access to a

wireless network by **(1) randomly generating a signature sequence from a set of signature sequences** and (2) sending a first preamble comprising said signature sequence.  But the claims do not recite that the transmitter must conduct the task of "randomly generating a signature sequence." Nor does OnePlus cite anything in the specification or prosecution history or any case law that suggests either that the transmitter itself must randomly select the signature sequence, or that "randomly selected" is an active step of the claims.

Accordingly, OnePlus fails to overcome the presumption that the disputed "transmitter" claim terms have their plain and ordinary meaning and do not invoke § 112, ¶ 6.  The law simply does not require disclosure of a "structure" or "algorithm" for the "randomly selected" element of the claims (which, in any event, is disclosed—*see* Dkt. 35 at 7-8).  Regardless of whether the disputed "transmitter" claim terms invoke § 112, ¶ 6 (and they do not—*see* Dkt. 35 at 5-7), the Court should reject OnePlus's proposal and related indefiniteness position as inconsistent with the intrinsic record, including the express language of claims 1 and 10.  A POSA would readily understand the words "randomly selected," and OnePlus does not show otherwise.

> 2.    **"processor" (Claims 10, 11, 12, 14, 15, 16, 18, 19)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite. | This claim should be construed under 35 U.S.C. 112, ¶ 6.<br><br>Function: determining that access attempts are unsuccessful<br>Structure: none disclosed<br><br>The claim is indefinite. |

The Court should adopt WSOU's plain and ordinary meaning proposal and find the term "processor" not to invoke § 112, ¶ 6 and not indefinite.  *See* Dkt. 35 at 9-12.  OnePlus cannot overcome the presumption that "processor" is not a means-plus-function term, nor can it prove by clear and convincing evidence that this claim term is indefinite in each of claims 10-12, 14-16, 18,

and 19.  A POSA would understand from the claims and specification of the '776 patent what a processor is and what it would do within the claimed device.  Dkt. 35 at 10-11.  The claims and specification provide sufficient structure to foreclose treatment under § 112, ¶ 6 and a finding of indefiniteness.

In its reply brief, OnePlus emphasizes its reliance on this Court's claim construction order in *WSOU v. Google*.  Dkt. 42 at 6.  That claim construction order, however, is simply an order without opinion regarding different patents than those at issue here, and is therefore of limited— if any—persuasive value.  Indeed, the Court in *WSOU v. Google* found that the term "processor" in one of the patents to have its plain and ordinary meaning and not to invoke § 112, ¶ 6.  *WSOU Invs. LLC v. Google LLC*, No. 6:20-cv-571-ADA, Dkt. 46 at 7-8 (W.D. Tex June 2, 2021).  OnePlus fails to offer any explanation for why it believes the Court's ruling regarding some "processor" terms should be more persuasive than its ruling regarding the "processor" term that the Court found not to invoke § 112, ¶ 6.

Indeed, while OnePlus criticizes WSOU for not addressing that single order without opinion, OnePlus fails to even address—let alone refute—***any*** of the ***dozen*** cases cited by WSOU that found that the term "processor" is not a "nonce word," "connotes a class of structures," does not invoke § 112, ¶ 6, and/or is not indefinite.  *See* Dkt. 35 at 9-11.

### 3.      "program of instructions" (Claim 19)

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  This claim should not be construed under 35 U.S.C. 112, ¶ 6, nor is it indefinite. | Preamble limiting; This claim should be construed under 35 U.S.C. 112, ¶ 6.<br><br>Function: attempting access to a wireless network by sending a signature sequence on a random access channel<br>Structure: none disclosed<br><br>The claim is indefinite. |

The Court should adopt WSOU's proposal and find the term "program of instructions" not to invoke § 112, ¶ 6 and not indefinite.  *See* Dkt. 35 at 13-15.  OnePlus cannot overcome the presumption that "program of instructions" is not a means-plus-function term, nor can it prove by clear and convincing evidence that claim 19 is indefinite.

In its reply, OnePlus again misplaces its reliance on this Court's claim construction opinion in *Dyfan, LLC v. Target Corp.*, No. 6:19-cv-179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020).[1]  *See* Dkt. 42 at 7.  As explained in WSOU's previous brief, claim 19, unlike the claim at issue in *Dyfan*, indicates to a POSA what information the program of instructions will generate and receive and how it will interact with other components to attempt access of a wireless network. *See* Dkt. 35 at 15 n.6.  OnePlus also does not—because it cannot—rebut any of the numerous cases that WSOU cited in its responsive brief to support the notion that terms such as "instruction," "program," and "code" are not "nonce words" and "connote[] sufficiently definite structure to avoid invoking § 112, ¶ 6."  *See id*. at 13-15.

Thus, OnePlus cannot meet the heavy burden of proving indefiniteness by clear and convincing evidence.  OnePlus's reply brief offers nothing more than attorney conjecture to

---

[1] The *Dyfan* decision is currently on appeal before the Federal Circuit (Case No. 21-1725), where it is scheduled for oral argument on November 5, 2021.  (Note: WSOU's responsive brief contained a typographical error, incorrectly identifying the appeal as Case No. 21-2175.)

challenge Dr. Cooklev's opinion that sufficient structure and algorithm for "program of instructions" are disclosed in Figure 3's "Table of sequence selection and power control for PRACH transmissions" (Ex. E at 3:55-57); Figure 5's "logical flow diagram that illustrates the operation of a method, and the result of execution of computer program instructions by the data process shown in FIGS. 6A-B" (*id*. at 3:61-64); Figure 6A's "simplified block diagram of various electronic devices that are suitable for use in practicing the exemplary embodiments of this invention" (*id*. at 3:65-67); and Figure 6B's "more particularized block diagram of a user equipment such as that shown at FIG. 6A" (*id*. at 4:1-2). *See* Dkt. 35 at 15 (citing Ex. G at ¶¶ 61-64). OnePlus is simply wrong that "these 'instructions' are nothing more than what is already recited in the claims." Dkt. 42 at 8.

## IV.   U.S. PATENT NO. 8,767,614 ("THE '614 PATENT")

### A.   <u>Disputed Terms</u>

1.   **"means for causing sending of a buffer information report to a system station" (Claim 6)**
**"at least one processor; and at least one memory including computer program code[,] the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus ... sending of a buffer information report to a system station" (Claim 13)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| These terms are not indefinite.  No construction necessary – plain and ordinary meaning.<br><br>Claim 13 should not be construed under 35 U.S.C. § 112, ¶ 6.  To the extent the Court treats the terms as means-plus-function:<br><br><u>Function</u>: "for causing sending of a buffer information report"<br><u>Structure</u>: processor and memory (refer 6:4-9) | This claim should be construed under 35 U.S.C. 112, ¶6.<br><br><u>Function</u>: causing sending of a buffer information report to a system station.<br><br><u>Structure</u>: none disclosed.<br><br>The claim is indefinite. |

Although OnePlus grouped the disputed phrases in claims 6 and 13 together in its briefing, they do not rise and fall together as OnePlus seems to improperly suggest.  To be clear, claim 6

uses the word "means," and the parties agree that it invokes § 112, ¶ 6.  Claim 13, however, does not use the word "means," and WSOU disputes that it invokes § 112, ¶ 6.  Indeed, as a starting point, claim 13 must be presumed *not* to invoke § 112, ¶ 6.  OnePlus cannot overcome that presumption.[2]

Claim 13 does not invoke § 112, ¶ 6, and neither claim 6 nor 13 is indefinite.  The claims require either a "means" (claim 6) or "at least one processor; and at least one memory including computer program code" (claim 13) to cause the apparatus to transmit certain data (a buffer information report) from a relay node to a system station.  Ex. F at claims 6, 13.  Any POSA would understand what structure is involved in causing the relay node to transmit data to a station, and claim 13 expressly states it.  As Dr. Cooklev opines, a POSA would understand that the device's processor would execute computer program code contained in memory to cause a data transmission.  Ex. G at ¶¶ 65-69.  Indeed, the claimed invention relates to the transmission of buffering data from a relay node.  Data transmission is a basic functionality of the system.  In this context, a program instruction to transmit data is a sufficient algorithm for a processor to execute to cause the system to transmit the data.  Claim 13 and the patent specification disclose such an instruction, which, when executed by the processor, causes the device to send the data transmission.  *See, e.g.*, Ex. F at claim 13, Figs. 3 & 4, 6:4-9, 7:42-43, 10:11-31.  The specification further discloses how the device operates to send the actual buffer information report.  *See, e.g.*, *id*. at Figs. 5-10 (depicting exemplary buffer information reports), 5:22-24 ("The data processing, storage and other entities can be provided on an appropriate circuit board and/or in chipsets."),

---

[2] In its reply brief, OnePlus again relies on *WSOU v. Google* (Dkt. 42 at 9-10), but ignores that the Court there also found the claim phrase "apparatus comprising a processor and memory including computer program code, the memory and the computer program code configured to, with the processor, cause the apparatus at least to . . ." to have its plain and ordinary meaning and not to invoke § 112, ¶ 6.  *Google*, No. 6:20-cv-571-ADA, Dkt. 46 at 6-7; *see supra*, § III.A.2.

6:56-7:4 ("In the examples  the relay node can send, for example, an extended BSR (E-BSR) to the donor eNB.  The E-BSR can be sent and the buffering information delivered, for example, by means of medium access control control element (MAC CE) and/or radio resource control (RCC) signaling").  It is unclear what additional disclosure of structure OnePlus contends a POSA would need to sufficiently understand the structure of the disputed claim terms that carries out the recited function of causing the sending of a buffer information report to a system station.

In its reply brief, OnePlus relies on the *HTC* and *Noah Systems* cases (Dkt. 42 at 10), but its interpretation of those cases is overbroad.  Unlike in those cases, the recited function in claims 6 and 13 is simply to cause the sending of data, which can be accomplished by a general-purpose processor without special programming.  Indeed, in *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303 (Fed. Cir. 2011), the Federal Circuit distinguished claims similar to those in the '614 patent from the line of cases in which *HTC* and *Noah Systems* fall.  *Id*. at 1316.  In *Katz*, the Federal Circuit vacated the district court's finding of indefiniteness with respect to claims reciting, for example, "means to receive … data signals," "means for storing … data signals," and "means for processing … data signals," which the district court had held lacked sufficient structure in the specification.  *Id*.  The Federal Circuit held that the district court erred by "interpret[ing] the principles of *WMS Gaming*, *Aristocrat*, and *Harris* too broadly" when it "interpreted those cases to require that 'the specification ... disclose an algorithm for any recited function' that is performed solely or predominantly by a general purpose computer."  *Id*.  The Federal Circuit noted that, in contrast to that line of cases, "Katz has not claimed a specific function performed by a special purpose computer, but has simply recited the claimed functions of 'processing,' 'receiving,' and 'storing[,]'  … which can be achieved by any general purpose computer without special programming."  *Id*.  "As such, it was not necessary to disclose more structure than the general

purpose processor that performs those functions." *Id*.  Accordingly, the Federal Circuit held that the "claims do not run afoul of the rule against purely functional claiming, because the functions of 'processing,' 'receiving,' and 'storing' are coextensive with the structure disclosed, *i.e.*, a general purpose processor." *Id*.

The same rationale applies here.  The disputed phrases in claims 6 and 13 of the '614 patent are directed to causing the sending of a buffer information report—*i.e.*, causing the transmission of data—which can be accomplished by a general purpose processor without special programming. Thus, like in *Katz*, where claiming a means for receiving data did not require an extensive algorithm to support its functionality, the '614 patent's recitation of means or components for causing sending of data does not require anything more than what is already disclosed in the patent.

> **2.** **"means for causing sending of an indication to the system station" (Claim 6)**
> **"at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus . . . sending of an indication to the system station" (Claim 13)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| These terms are not indefinite.  No construction necessary – plain and ordinary meaning.<br><br>Claim 13 should not be construed under 35 U.S.C. § 112, ¶ 6.  To the extent the Court treats the terms in claims 6 and/or 13 as means-plus-function:<br><br>Function: "for causing sending of an indication to the system station"<br>Structure: processor and memory (refer 6:4-9) | This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>Function: causing sending of an indication to the system station.<br>Structure: none disclosed.<br><br>The claim is indefinite. |

Once again, the disputed terms in claim 6 (which recites "means") and claim 13 (which does not recite "means") do not rise and fall together.  OnePlus cannot overcome the presumption that the disputed phrase in claim 13 does not invoke § 112, ¶ 6, nor can OnePlus establish by clear

and convincing evidence that claim 6 or 13 is indefinite.

The disputed phrases in claims 6 and 13, like the previously discussed disputed terms in these claims (*supra*, § IV.A.1.), are directed to causing the sending of data to the system station. For the same reasons discussed above (*supra*, § IV.A.1.) and in WSOU's responsive brief (Dkt. 35 at § IV.B.2.), claim 13 discloses sufficient structure to avoid means-plus-function treatment, and the specification discloses sufficient structure to avoid a finding of indefiniteness for both claims 6 and 13.

> **3.** **"the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following: process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension" (Claim 14)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning: This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite.<br><br>If the Court deems a construction is necessary:<br><br>"the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following:<br><br>process a signal signifying that the buffer size of the intermediate node is extended from that of the user equipment and information of the size of the extension" | This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>Function: indefinite.<br>Structure: indefinite.<br><br>Alternatively:<br>Function: processing an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension.<br>Structure: none disclosed.<br><br>In either instance, the claim is indefinite. This proposed construction supersedes Defendant's Proposed Claim Constructions served on August 10, 2021 |

OnePlus cannot overcome the presumption that claim 14 is not a means-plus-function claim nor meet its burden of establishing indefiniteness by clear and convincing evidence. OnePlus's reply brief repeatedly mischaracterizes WSOU's position regarding the definiteness of claim 14, wrongly asserting that "WSOU does not dispute that, if this claim is found to invoke

§ 112, ¶ 6, the claim is invalid for indefiniteness for lack of disclosed corresponding structure." Dkt. 42 at 14.  WSOU clearly disputes indefiniteness and all of OnePlus's claim construction and indefiniteness arguments for claim 14 are premised on the claim being governed by § 112, ¶ 6. Thus, OnePlus's reply brief ignores the context of its own opening positions.  In any event, claim 14 is sufficiently definite regardless of its § 112, ¶ 6 status.

Claim 14 depends from claim 13, and further recites:  "wherein the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following: process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension."  Just as with claim 13 (*see supra*, §§ IV.A.1-2), to the extent the Court finds that claim 14 invokes § 112, ¶ 6, the specification discloses adequate structure for the recited function in the form of a processor and memory (*see* Ex. F at 6:4-9).  A "processor" and "memory" are expressly recited in claims 13 and 14 as the structure that carry out the functions recited in the claims.

Whereas OnePlus has cited no authority that supports its indefiniteness position for claim 14,[3] a litany of courts have found the verb "process" or "processing" in the computer arts context to be sufficiently definite and have a plain and ordinary meaning either requiring no construction or along the same lines WSOU has proposed (*see* Dkt. 35 at 24).  *See, e.g., St. Isidore Research, LLC v. Comerica Inc.*, No. 15-cv-1390, 2016 WL 4988246, at *16-17 (E.D. Tex. Sept. 19, 2016)

---

[3] None of the cases that OnePlus has cited in its briefing regarding claim 14 found indefiniteness. In fact, in *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008), the Federal Circuit affirmed the district court's finding of no indefiniteness, noting that, even in a situation where a "circuit element is shown as a 'black box,' *i.e.*, nothing in the figures or text of the written description describes the details of its inner circuitry[,] … the absence of internal circuitry in the written description does not automatically render the claim indefinite." *Id*. at 1338-39.  *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003), also cited in OnePlus's briefing, does not even address indefiniteness.

(finding "processing the transaction" to have its plain meaning and not be indefinite); *Metaswitch Networks Ltd. v. Genband USA LLC*, No. 14-cv-744, 2015 WL 11197822, at *49-510 (E.D. Tex. Aug. 10, 2015) (finding "process …" claim phrases to have their plain meanings and not be indefinite); *Queens Univ. at Kingston v. Samsung Elecs Co.*, No. 14-cv-53, 2015 WL 2250384, at *16 (E.D. Tex. May 13, 2015) (same); *Personalized Media Commc'ns LLC v. Zynga, Inc.*, No. 12-cv-68, 2013 WL 4630447, at *7-9 (E.D. Tex. Aug. 28, 2013) (construing "processing" to mean "performing operations on data"); *Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*, No. 10-cv-260, 2012 WL 5494087, at *20-22 (E.D. Tex. Nov. 13, 2012) (construing "processing" to have its plain and ordinary meaning); *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, No. 08-cv-164, 2009 WL 8080892, at *14-15 (E.D. Tex. Dec. 18, 2009) (finding that "the word 'processing' has a common and ordinary meaning" that does not require construction).[4]

In sum, OnePlus's indefinite positions lack support in the intrinsic record, extrinsic evidence, or the law, and should be rejected.

## V.    CONCLUSION

WSOU respectfully requests that the Court adopt its proposed constructions and reject OnePlus's indefiniteness arguments.

---

[4] *See also Twilio, Inc. v. TeleSign Corp.*, No. 16-cv-6925, 2017 WL 4573371, at *19-21 (N.D. Cal. Oct. 13, 2017) (construing "process" and "processing" claim terms to have their plain and ordinary meanings); *Joao Bock Transaction Sys. v. First Nat'l Bank*, No. 11-cv-1642, 2013 WL 3199981, at *11 (E.D. Ill. June 24, 2013) (defining "processing" and process in accordance with technical dictionaries to mean, respectively, "manipulating data within the computer" and "'to manipulate data in the computer,' adding that 'the computer is said to be processing no matter what action is taken upon the data.'"); *Brown v. Baylor Healthcare Sys.*, No. 08-372, 2009 WL 1011186, at *16-17 (S.D. Tex. May 7, 2009) (construing "processing" to mean "performing a series of comparisons and calculations on data that lead toward a particular result").

Dated:  October 12, 2021                    RESPECTFULLY SUBMITTED,

By:  */s/ Jonathan K. Waldrop*
      Jonathan K. Waldrop (CA Bar No. 297903)
      (Admitted in this District)
      jwaldrop@kasowitz.com
      Darcy L. Jones (CA Bar No. 309474)
      (Admitted in this District)
      djones@kasowitz.com
      Marcus A. Barber (CA Bar No. 307361)
      (Admitted in this District)
      mbarber@kasowitz.com
      John W. Downing (CA Bar No. 252850)
      (Admitted in this District)
      jdowning@kasowitz.com
      Heather S. Kim (CA Bar No. 277686)
      (Admitted in this District)
      hkim@kasowitz.com
      Jack Shaw (CA Bar No. 309382)
      (Admitted in this District)
      jshaw@kasowitz.com
      **KASOWITZ BENSON TORRES LLP**
      333 Twin Dolphin Drive, Suite 200
      Redwood Shores, California 94065
      Telephone: (650) 453-5170
      Facsimile: (650) 453-5096

      Mark D. Siegmund (TX Bar No. 24117055)
      mark@waltfairpllc.com
      **LAW FIRM OF WALT FAIR, PLLC**
      1508 N. Valley Mills Drive
      Waco, TX 76710
      Telephone:  (254) 772-6400
      Facsimile:  (254) 772-6432

      **Attorneys for Plaintiff**
      **WSOU INVESTMENTS, LLC d/b/a**
      **BRAZOS LICENSING AND**
      **DEVELOPMENT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on October 12, 2021, pursuant to Local Rule

CV-5, a true and correct copy of the foregoing document was served via the Court's CM/ECF

system on all parties who have appeared in this case.

<u>/s/ Jonathan K. Waldrop</u>
**Jonathan K. Waldrop**
